UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI SUSAN KATONA,                           Case No. 14-10417

              Plaintiff,                     Mark A. Goldsmith
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)**

**I.    PROCEDURAL HISTORY**

    **A.    Proceedings in this Court**

On January 29, 2014, plaintiff Lori Susan Katona filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Mark A. Goldsmith referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for disability insurance benefits.  (Dkt. 3).  This matter is before

the Court on cross-motions for summary judgment.  (Dkt. 10, 11).

    **B.    Administrative Proceedings**

Plaintiff filed the instant claim for disability and disability insurance

benefits on June 7, 2011, alleging disability beginning June 30, 2010. (Dkt. 7-5, Pg ID 156-61). Plaintiff's claims were initially disapproved by the Commissioner on October 11, 2011. (Dkt. 7-3, Pg ID 103). Plaintiff requested a hearing and on July 18, 2012, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Anthony R. Smereka, who considered the case de novo. (Dkt. 7-2, Pg ID 48-91). In a decision dated August 30, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 29-43). Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 5, 2013, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 23-26); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1962 and was 49 years old at the time of the administrative hearing, and 47 years of age on the alleged disability onset date. (Dkt. 7-2, Pg ID 41). Plaintiff had past relevant work as a housekeeper and a

janitor.  (Dkt. 7-2, Pg ID 41).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 30, 2010.  (Dkt. 7-2, Pg ID 34).  At step two, the ALJ found that plaintiff's obesity, chronic obstructive pulmonary disease, obstructive sleep apnea, and degenerative disease of the spine were "severe" within the meaning of the second sequential step, but that plaintiff's cardiologic conditions, heel impairment, impairment of the right upper extremity, and mental impairment were not severe.  (Dkt. 7-2, Pg ID 34-36).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 36-37).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b), as the claimant is capable of lifting and/or carrying up to 10 pounds frequently and 20 pounds occasionally, sitting up to six hours in an eight-hour workday, and standing and/or walking up to six hours in an eight-hour workday. The claimant, however, would need an at-will, sit-stand option.  The claimant should avoid unprotected heights, and should never climb ladders, ropes, or scaffolds.  The claimant may only occasionally climb ramps or stairs, balance, stoop, kneel, or crouch.  The claimant should never crawl.  The claimant should avoid concentrated exposure to extreme temperatures.  The claimant should avoid even moderate exposure to dusts, fumes, gases, and poor ventilation.

(Dkt. 7-2, Pg ID 37-41).  At Step Four, the ALJ found that plaintiff was not able to perform her past relevant work as a housekeeper or janitor, because it is outside the parameters of the RFC.  (Dkt. 7-2, Pg ID 41).  The ALJ then found that jobs exist in significant numbers in the national economy that plaintiff can perform and concluded that plaintiff has not been under a disability from June 30, 2010, through the date of the decision.  (Dkt. 7-2, Pg ID 41-42).

### B.    Plaintiff's Claims of Error

Plaintiff argues as her first claim of error that the ALJ erroneously denied her claim, in part, because he determined that her depression and anxiety are "non-severe impairments."  Plaintiff contends that this led to the concomitant error that the ALJ's RFC finding includes no mental impairment affecting plaintiff's ability to work.  According to plaintiff, unambiguous Agency policy provides that an impairment can be considered "not severe" only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  SSR 85-28.  Plaintiff continues that, consistent with this unambiguous policy, the Sixth Circuit found in *Farris v. Secretary of Health & Human Services*, 773 F.2d 85 (6th Cir. 1985), that a denial at step two of the sequential evaluation was appropriate only if the medical condition or combination of conditions resulted in only "a slight neurosis, slight impairment of sight or hearing, or other

slight abnormality or a combination of slight abnormalities."  Plaintiff contends that the ALJ here concluded that plaintiff's depression and anxiety are non-severe because she did not receive any "specialized" mental health care and has instead been followed by her primary care physician since 2002, and also referred to treatment records demonstrating generally normal mental status.  (Tr. 14). Plaintiff argues that the ALJ's rationale does not form a sufficient legal basis to conclude that plaintiff's mental impairments are not severe because while plaintiff has not received "specialized" treatment for depression and anxiety, she has been followed by her primary care physician, Dr. J. Stepanski, for these conditions since 2002 and has been prescribed Prozac.  (Tr. 54, 361).  Plaintiff acknowledges that there are no formal mental status examinations in the record, but contends that this is likely because plaintiff's providers specialize in chiropractic treatment, podiatry, and pulmonology, not psychiatry.  Plaintiff notes, however, that she admitted to depression with frequent mood swings and crying spells during a July 20, 2011 appointment with Dr. Mary O'Connor.  (Tr. 335).  Moreover, Dr. Stepanski summarized his treatment of plaintiff in a June 22, 2012 medical source statement, wherein he advised that she suffers from a disturbance of mood accompanied by the following clinically observed symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbances with a change in weight; sleep disturbance; psychomotor agitation or retardation;

decreased energy; difficulty concentrating or thinking; pressured speech; flight of ideas; and easy distractibility. (Tr. 383-84). Dr. Stepanski opined that plaintiff's symptoms contribute to marked restrictions of activities of daily living, social functioning, and episodes of deterioration or decompensation, and extreme limitations of concentration, persistence, or pace. (Tr. 385). Plaintiff asserts that the ALJ assigned Dr. Stepanski's opinion "little" weight primarily due to the lack of objective medical evidence concerning plaintiff's mental impairments. Plaintiff argues that because she included depression as a disabling condition in her application for benefits, the ALJ could have ordered a psychological consultative examination to obtain the missing objective evidence and to determine the extent to which her mental impairments interfere with her ability to function, or he could have obtained medical expert testimony at the hearing. But the ALJ instead chose to ignore the opinion of plaintiff's longtime primary care physician and to assume, on the basis of lay opinion only, that her mental impairments have no effect on her functional capacity. Plaintiff asserts that this is clear error, requiring remand.

Plaintiff also argues that the ALJ erred in failing to assign appropriate weight to the consistent opinions of her longtime primary care physician and chiropractor with respect to her physical limitations. The ALJ here found that plaintiff would be able to stand and walk up to six hours in an eight hour day and lift up to 20 pounds. (Tr. 15). Plaintiff argues that because the Agency never had

6

her examined, the only evidence supporting this conclusion is the assessment of the nonexamining state Agency consultant who reviewed the file when plaintiff first filed her application.  Plaintiff contends that the ALJ improperly gave little weight to the opinion of treating physicians who were very familiar with her medical condition, had examined her on numerous occasions, and who provided a function-by-function assessment of her abilities to work on a regular and continuous basis. According to plaintiff, the value of these opinions was not properly outweighed by that of a nonexamining physician who never saw the opinions of plaintiff's treating physicians, no less considered their observations.

Plaintiff asserts that on June 22, 2012, her primary care physician Dr. Stepanski opined that plaintiff can lift/carry up to 10 pounds, stand/walk less than two hours and sit less than two hours total during an eight hour workday, she can sit and stand 30 minutes at a time before needing to shift positions, and she must walk around every 20 minutes for 10 minutes at a time.  (Tr. 381). Dr. Stepanski opined that plaintiff needs the opportunity to shift positions at will from sitting, standing, or walking, and she will need to lie down once or twice, at unpredictable intervals, during an eight hour working shift.  (*Id.*)  She can occasionally twist and climb stairs, but she can never stoop, crouch, or climb ladders, and she has a limited capacity to reach and push/pull.  (Tr. 381). Dr. Stepanski anticipated that plaintiff would be absent more than four days per

month as a result of her impairments, and he indicated that the above limitations were based on plaintiff's history, examination findings, and abnormal imaging studies.  (*Id.*)

On August 1, 2012, Dr. Lockwood, plaintiff's chiropractor since at least June 2009, assessed a guarded prognosis for her cervical radiculopathy, which causes severe right arm pain, numbness, tingling, and extremity shaking.  (Tr. 312, 390).  Dr. Lockwood summarized relevant objective findings, which included a positive Spurling's test on the right, associated muscle weakness, and loss of active cervical range of motion.  (Tr. 390).  He advised that plaintiff's constant pain precludes activities of daily living and work capacity with or without interruption, and opined that she would likely be off task 25 percent or more of the workday and is incapable of even low stress work due to severe, disabling pain.  (Tr. 391, 393).  Dr. Lockwood further opined that plaintiff is significantly limited in her ability to grasp, perform fine manipulation, and reach with both upper extremities, and he noted that she would likely be absent from work more than four days per month.  (Tr. 393).

Plaintiff argues that the opinions of Dr. Stepanski and Dr. Lockwood are consistent only with a finding of "disabled" because, according to the regulations, the "ability to work" means being able to work full time.  *See* SSR 96-8p (providing that RFC assessments must consider an individual's maximum

8

remaining ability to do sustained work activities in an ordinary work setting on a

"regular and continuing basis").  Plaintiff continues that consistent with this

unambiguous Agency policy, the vocational expert testified that missing even two

days of work per month would preclude all competitive employment.  (Tr. 66).

Plaintiff continues that 20 C.F.R. §404.1527 specifically states:

> Generally we give more weight to opinions from your
> treating sources, since these sources are likely to be
> medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairments and
> may bring a unique perspective to the medical evidence
> that cannot be obtained from the objective medical
> findings alone or from reports of individual
> examinations, such as consultative examinations or brief
> hospitalizations.

According to SSR 96-2p, these new Regulations:

> …(do not) permit us to substitute our own judgment for
> the opinion of a treating source on the issue(s) of the
> nature and severity of an impairment when the treating
> source has offered a medical opinion that is well-
> supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not inconsistent
> with other substantial evidence.

If the RFC assessment conflicts with an opinion from a medical source, the

adjudicator must explain why the opinion was not adopted, and the reasons for

rejecting treating source evidence must:

> …always (be) good reasons…(and)… contain specific
> reasons for the weight given to the treating source's
> medical opinion, supported by the evidence in the case

> record, and must be sufficiently specific to make clear to
> any subsequent reviewers the weight the adjudicator
> gave to the treating source's medical opinion and the
> reasons for that weight. in the notice of the determination
> or decision for the weight given to a treating source's
> medical opinion(s).

SSR 96-2.  Plaintiff asserts that the "good reasons" analysis has been adopted

explicitly in the Sixth Circuit.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541

(6th Cir. 2004).

Plaintiff argues that the ALJ's assessment is decidedly unclear as to what, if

any, weight he gave Dr. Stepanski's opinion, and is also legally insufficient.

Plaintiff further contends that nowhere in the Act or regulations is it required that

a claimant receive "intensive" or "emergent care" in order to be found disabled.

Plaintiff continues that, as for Dr. Stepanski's treatment notes, while they are

admittedly difficult to read in places, it is still very easy to find significant support

for his opinions, establishing significant physical limitations on plaintiff's ability

to perform work like activities, in that plaintiff reported activity-limiting shortness

of breath and back pain restricting her ability to stand, sit, and move about.  (Tr.

227, 229, 383).  On December 15, 2011, Dr. Stepanski ordered x-rays of plaintiff's

spine, which revealed moderate lumbar degenerative changes at L4-5 and L5-S1.

(Tr. 370).  On June 14, 2012, plaintiff presented with complaints of tingling from

her bilateral shoulders to her hands and fingers.  (Tr. 361).  Dr. Stepanski noted a

positive Tinel's sign and decreased sensation distally along the bilateral upper

extremities, and he diagnosed plaintiff with cervical disc disease and left shoulder

degenerative joint disease and prescribed Norco. *Id.* Cervical spine x-rays

revealed moderate degenerative changes with loss of intervertebral disc space

height at C5-6 and C6-7. (Tr. 366).

Plaintiff further argues that Dr. Stepanski's opinion is supported by Dr.

Lockwood's chiropractic treatment records, because examinations since June 2010

have indicated cervical, thoracic, and lumbar subluxation (Tr. 260-84, 347-53,

386-88), positive Derefield's testing on the right (Tr. 259-82, 284, 348-53, 386),

decreased right (and at times bilateral) sacroiliac range of motion (Tr. 259-65,

267-73, 277-82, 348-53, 386), restricted cervical range of motion (Tr. 386),

restricted lumbar range of motion (Tr. 274, 278, 284, 386), cervical and lumbar

paraspinal muscle spasms (Tr. 259-66, 269-76, 279, 281, 349, 352), and

diminished upper extremity strength. (Tr. 386). Plaintiff notes that the ALJ

assigned Dr. Lockwood's opinion "little weight" because Dr. Lockwood is not an

acceptable medical source, the medical records note the consistent denial of

radicular symptoms and/or weakness and reports of only moderate pain, and there

was no "indication that the claimant would require more intensive, orthopedic, or

otherwise emergent care." (Tr. 18-19). Plaintiff argues that although Dr.

Lockwood, as a chiropractor, is deemed an "unacceptable medical source" under

11

the regulations, this title does not in any way suggest that the SSA does not treat these opinions as extremely valuable sources of information about a claimant's limitations. Indeed, plaintiff continues, the regulations, 20 CFR 404.1513, and Social Security Ruling 06-03p, provide specific criteria for evaluating the medical opinions of nonacceptable sources, including that the. Plaintiff contends that opinions from these medical sources, under the Agency's rules, are important and must be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. Plaintiff asserts that the factors in 20 CFR 404.1527(d) and 416.927(d), which explicitly apply to the evaluation of medical opinions from "acceptable medical sources," are also applied to opinion evidence from these "other sources," and that not only does the term "nonacceptable" not denote a lack of value, SSA's own comments in the Federal Register with respect to SSR 06-03p explicitly state that, under the correct circumstances, it would be appropriate to give more weight to a nonacceptable medical source opinion than an acceptable one, because the Agency has recognized that such sources have "increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p.

Plaintiff further argues that contrary to the ALJ's assessment, plaintiff has repeatedly described severe, radicular pain during visits with Dr. Lockwood. (Tr.

271, 273-74, 276, 386, 387-89).  Plaintiff contends, more importantly, that

Dr. Lockwood's notes as shown above document numerous positive objective

findings that support his opinions. Additionally, as noted above, there is no

prerequisite for intensive or emergent care to receive disability benefits.  Notably,

plaintiff continues, the ALJ neglected to mention the consistency between the

opinions of Dr. Lockwood and Dr. Stepanski.  "Consistency" of an opinion with

other opinions is a factor that must be considered pursuant to 20 CFR 404.1527.

Plaintiff argues that because the opinions of the primary care physician and

chiropractor are the only medical opinions contained in the record, it is impossible

not to conclude that the ALJ relied on lay opinion as a basis to reject these

opinions which, plainly, does not constitute substantial evidence supporting an

ALJ's denial of benefits.  *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx.

181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.

1996)).

Plaintiff argues that the ALJ's flawed analysis of treating source evidence is

not harmless, in part because analysis of medical opinions is so fundamental that

an error in this respect undermines the entire decision, but also because plaintiff's

impending 50th birthday created a "borderline age situation" where ability to work

at any lower exertional level requires a finding that she is "disabled" pursuant to

the Medical Vocational guidelines.  Plaintiff contends that, for the sake of

argument, taking into account that it may be reasonable to give less than full weight to the opinions of her treating physician and chiropractor, it is significant that nothing in these opinions or elsewhere in the treatment records suggests that plaintiff would be able to perform the prolonged standing and walking or lifting of up to 20 pounds required in the performance of "light work." Thus, plaintiff concludes, the highest RFC rationally supported by these medical opinions and supporting evidence is an RFC for "sedentary work," which does not require prolonged standing and walking. Plaintiff asserts that because she was just two months shy of her 50th birthday at the time of the hearing, a maximum RFC for sedentary work creates a "borderline age situation." (Tr. 26, 196). The regulations state that age categories shall not be applied "mechanically" in a borderline situation, defined as being within a few months of a new age category, and a two-step test is required to determine whether to use a higher age than a claimant's chronological age when applying the medical-vocational guidelines: "(1) determine whether the claimant's age is within a few days or a few months of a higher age category; and (2) if so, determine whether using the higher age category would result in a decision of 'disabled' instead of 'not disabled.'" 20 C.F.R. § 404.1563(b). Given plaintiff's additional vocational factors of a high school education and inability to perform her unskilled past relevant work (Tr. 60-61), plaintiff contends that a maximum residual functional capacity for sedentary

14

work would ordinarily direct a finding of "disabled" pursuant to the Medical-Vocational Guidelines, Rule 201.12.  Therefore, plaintiff concludes, the ALJ's error in his analysis of treating source evidence is not "harmless" and the case should be remanded for further proceedings.

### C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly found at Step Two of the sequential evaluation that plaintiff did not have a severe mental impairment.  The Commissioner concedes that plaintiff correctly points out that step two is merely a *de minimis* threshold, *see Bowen v. Yuckert*, 482 U.S. 137, 147-54 (1987), but contends that the standard for screening out non-severe impairments is not entirely toothless. At step two, plaintiff must show that the impairment significantly limited her ability to do basic work activities for a continuous period of at least 12 months.  (Tr. 20).  *See* 20 C.F.R. §§ 404.1509, 1520(a)(4)(ii), (c), 1521(a).  As the ALJ observed, a single treatment note from July 2011—which indicates that plaintiff used Prozac to manage her reported symptoms of depression—does not establish that depression had more than a minimal effect on her ability to work for a continuous 12-month period.  (Tr. 14, citing Tr. 318, 335, 380).  The ALJ noted that plaintiff's alleged mental disability is inconsistent with: (1) treatment notes containing no abnormal mental status findings; (2) her lack of specialized mental health care; (3) her significant daily activities and social interactions; and

15

(4) function reports indicating that she had no significant mental deficits.  (Tr. 14, 17-18).  The Commissioner concludes that the ALJ, accordingly, reasonably found that plaintiff's alleged depression did not significantly limit her ability to work during the relevant period and, therefore, was not severe.  (Tr. 14).  The Commissioner asserts that this finding is consistent with Dr. William Schirado's assessment.  (Tr. 74-75).  According to the Commissioner, the ALJ's well-supported determination must stand, even if other evidence supports a contrary conclusion.  *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

The Commissioner argues that plaintiff's reliance on SSR 85-28 is misplaced for another reason as well.  According to the Commissioner, that Ruling applies to cases where the ALJ ends the sequential evaluation (*i.e.*, finds the claimant "not disabled") at step two because no impairment *or combination of impairments* has more than a minimal effect on the claimant's ability to work. SSR 85-28, 1985 WL 56856, at *3.  The Commissioner asserts that did not happen here, as the ALJ resolved step two in plaintiff's favor and proceeded to consider the combined effect of her severe and non-severe impairments at steps three through five of the sequential evaluation.  (Tr. 11, 14-19).  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (finding step-two error harmless where ALJ proceeds to consider nonsevere impairment later in sequential evaluation process).  The Commissioner further argues that the ALJ here did not

16

include any mental restrictions in his RFC assessment because, as he explained, the evidence simply does not support it. (Tr. 14). *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (ALJ is required to incorporate in RFC assessment only those limitations that the record credibly supports). The Commissioner asserts that plaintiff's observation that "[t]here are no formal mental status examinations in the record, likely because [plaintiff's] providers specialize in chiropractic treatment, podiatry, and pulmonology, not psychiatry" merely underscores plaintiff's own failure to produce medical evidence supporting her claim of disabling mental symptoms. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."). As for plaintiff's argument that the ALJ could have ordered a psychological consultative examination or could have obtained medical expert testimony at the hearing, the Commissioner responds, initially, that plaintiff, not the Commissioner, bears the burden of production and persuasion as to the severity and limiting effects of her impairments. *Her*, 203 F.3d at 391. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The Commissioner continues that the duty to obtain additional evidence is triggered only when it is necessary to resolve an ambiguity in the record, or when there is insufficient evidence to

determine the merits of the disability claim. *Id.* at 355-56; 20 C.F.R. § 404.1519a(b). The Commissioner argues that plaintiff's call for additional evidence must fail because she speaks only to what the ALJ had the discretion to do, without explaining why it was necessary to exercise that discretion in this case. *See Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). The Commissioner asserts that plaintiff's argument presupposes that objective evidence exists to support Dr. Stepanski's conclusory opinions—the ALJ simply needed to marshal it. The Commissioner counters that the more plausible explanation for the lack of supportive evidence is that no doctor evaluated plaintiff's psychological condition because her symptoms did not warrant it. Indeed, the Commissioner continues, plaintiff herself reported that: (1) Dr. Stepanski saw her twice a year and gave her Prozac (Tr. 43, 54, 56); (2) the Prozac helped (Tr. 54, 201, 318); (3) she did not have any significant mental deficits (Tr. 200); and (4) she had not been referred to a mental health specialist, nor did she plan to seek such treatment. (Tr. 56, 154, 208). The Commissioner asserts that the ALJ rejected Dr. Stepanski's opinion not because the information supporting it was unclear or incomplete, but rather because his conclusions do not hold up under the weight of other evidence in the record, *e.g.*, plaintiff's minimization of her depression (Tr. 54, 154, 200-01, 208), along with

the absence of any specialized treatment to substantiate extreme mental limitations.  (Tr. 14).  *See Foster*, 279 F.3d at 355-56.

The Commissioner also argues that the ALJ properly discounted Dr. Stepanski's and Dr. Lockwood's opinions.  The Commissioner contends that a treating source's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory findings and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If the opinion does not receive controlling weight, the ALJ must determine how much weight it deserves by considering the following factors: the length, nature, and extent of the treatment relationship; the opinion's supportability and consistency with the record as a whole; the treating source's area of specialization, if any; and any other relevant factors.  *Id.*  The Commissioner contends that, consistent with the above framework, the ALJ here appropriately discounted Dr. Stepanski's assessment of disabling physical limitations because it was not supported by objective medical findings and was inconsistent with: (1) plaintiff's conservative course of treatment (Tr. 18); (2) evidence that her symptoms were manageable (Tr. 18; *see* Tr. 44, 48, 332, 355-57); and (3) her significant activities of daily living, which included doing laundry, preparing simple meals, vacuuming, dusting, light yardwork, caring for a dog, driving, shopping, and visiting with

19

friends and family.  (Tr. 18; *see* Tr. 14, 17-18, 183-90, 195-202). *See* 20 C.F.R.

§ 404.1527(c)(3) (supportability), (c)(4) (consistency); *see also Bogle v. Sullivan*,

998 F.2d 342, 345, 347-48 (6th Cir. 1993) (ALJ may discount treating source

opinion that is unsupported by objective evidence or inconsistent with other

substantial evidence, including the physician's own treatment notes).  The

Commissioner argues that contrary to plaintiff's assertion that Dr. Stepanski's

opinion finds significant support in his treatment notes, the ALJ was not required

to embrace a medical opinion based on subjective complaints that the ALJ has

discredited, *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007),

and plaintiff has not challenged the ALJ's credibility findings.  The Commissioner

further argues that plaintiff gains nothing from clinical signs of tingling in her

upper extremities, as Dr. Stepanski did not see fit to include any

handling/fingering/feeling limitations in the questionnaire he completed one week

later.  (Tr. 382).  Moreover, the Commissioner continues, such findings do not

support Dr. Stepanski's opinion that plaintiff had difficulty sitting, standing,

walking, stooping, crouching, and climbing, nor do they explain the purported

need to miss more than four days of work.  (Tr. 381-82).  The Commissioner does

not dispute that the objective imaging studies support a diagnosis of degenerative

disc disease, noting that, indeed, the ALJ identified degenerative disease of the

spine as a severe impairment (Tr. 12) and accounted for it in assessing plaintiff's

RFC.  (Tr. 17).  The Commissioner argues, however, that the moderate degenerative changes merely reflect an impairment capable of producing plaintiff's reported symptoms; they do not prove that plaintiff *actually* experienced pain and radicular symptoms so severe as to preclude a reduced range of light work.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that the mere diagnosis of an impairment does not establish that a condition is disabling; there must be a showing of related functional loss).  As the ALJ noted, plaintiff's unremarkable consultative examination in September 2011—more than a year after her alleged onset date—weighs against a finding that her degenerative spine condition was disabling.  (Tr. 17, citing Tr. 343-44).

The Commissioner notes that plaintiff also challenges the ALJ's reliance on the lack of more intensive or specialized treatment.  The Commissioner argues that while the relevant statutes and regulations do not explicitly require intensive or emergency treatment, they do permit ALJs to consider the level of treatment a claimant has received as one factor in weighing medical opinions.  *See* 20 C.F.R. § 404.1527(c)(6) (ALJs may consider "any factors" that tend to support or contradict the opinion."); *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 806 (6th Cir. 2011) (holding that ALJ reasonably viewed limited treatment largely confined to pain medications as inconsistent with treating physician's assessment of disabling limitations). The Commissioner asserts that the ALJ did not err.

As for Dr. Lockwood's opinion, the Commissioner argues that although Dr. Lockwood's relationship with plaintiff dates back to at least June 2009, he is not an "acceptable medical source," and thus is not qualified to offer a "medical opinion" as the Commissioner's regulations define the term. The Commissioner concludes that the treating physician rule therefore does not apply to Dr. Lockwood. *See* SSR 06-03p, 2006 WL 2329939, at *2 ("only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."). The Commissioner asserts that instead, Dr. Lockwood's questionnaire is treated as an "other source" opinion, 20 C.F.R. § 404.1513(d), which the ALJ evaluates using the same factors for weighing opinions from acceptable medical sources. *See* 20 C.F.R. § 404.1527(c)(2)-(6); SSR 06-03p, 2006 WL 2329939, at *2-5. According to the Commissioner, the ALJ gave little weight to Dr. Lockwood's opinion because, like Dr. Stepanski's opinion, it was at odds with the modest clinical findings in the record, the lack of more intensive treatment, and plaintiff's consistent reports of only moderate pain (Tr. 18-19), which contrast sharply with Dr. Lockwood's assessment of "severe disabling pain." (Tr. 393). The Commissioner notes that the ALJ did not discount Dr. Lockwood's clinical findings; he simply found that extreme functional limitations did not follow logically from those findings. (Tr. 18-19). *See Dumas*, 712 F.2d at 1552 ("To be disabling, pain must be so severe … as to preclude any

substantial gainful employment."). The Commissioner notes that Dr. Lockwood

eschewed a function-by-function assessment of plaintiff's exertional capacity in

favor of a broad statement that plaintiff's constant pain precluded *all* daily

activities and work activity. (Tr. 391-92). The Commissioner further asserts that

Dr. Lockwood's conclusory opinion that plaintiff's pain precludes "work

capacity" does not qualify as a "medical opinion" and is not entitled to any special

weight under the Commissioner's regulations. *See* 20 C.F.R. § 404.1527(d) (an

opinion that a claimant is "disabled" or "unable to work" is not a "medical

opinion," but rather is an administrative finding on an issue reserved to the

Commissioner); SSR 96-5p, 1996 WL 374183, at *5 (opinions on issues reserved

to the Commissioner "can never be entitled to controlling weight or given special

significance"). According to the Commissioner, plaintiff faults the ALJ for failing

to mention the consistency between Dr. Lockwood's and Dr. Stepanski's opinions,

which the Commissioner asserts were consistent only in the sense that both

doctors offered very pessimistic takes on plaintiff's functioning. The

Commissioner asserts that the fact that the opinions were vaguely consistent with

each other is faint praise, as the reasons for discounting Dr. Stepanski's

assessment apply with equal force to Dr. Lockwood's. *See* 20 C.F.R.

§ 404.1527(c)(3) (supportability), (c)(4) (consistency). The Commissioner

concludes that the ALJ did not ignore the medical opinion evidence favorable to

plaintiff's claim; he simply assigned it less weight given other, more compelling evidence that plaintiff was not as limited as reported, and plaintiff cannot negate the ALJ's well-supported findings simply by pointing to evidence that favors her claim. *Crum*, 921 F.2d at 644. Rather, she must show not only that evidence exists supporting her position, but also that the evidence on which the ALJ relied is insufficient, incorrect, or both. *See id*. The Commissioner asserts that plaintiff has not done so. Accordingly, the Commissioner requests that the Court affirm the Commissioner's final decision because it is supported by substantial evidence.

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

27

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.   Analysis and Conclusions

### 1.   The ALJ's finding that plaintiff did not have a severe mental impairment is supported by substantial evidence

Here the ALJ found that plaintiff's obesity, chronic obstructive pulmonary disease, obstructive sleep apnea, and degenerative disease of the spine were severe impairments, but that her cardiologic conditions, heel impairments, right shoulder impairment and anxiety and depression were not severe.  (Tr. 13-14).  Plaintiff argues that the ALJ erred by failing to find that her mental impairment was severe. It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation. *See, e.g., Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  The purpose of step two is "to screen out totally groundless claims."  *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009).  If the ALJ continues with the remaining steps,

any error at step two is harmless. Because the ALJ here found the existence of severe impairments, and thus continued to the remaining steps of the sequential evaluation, any error at step two in failing to find that plaintiff's mental impairment was severe is harmless.[1]

The undersigned further suggests that substantial evidence supports the ALJ's decision. The ALJ noted only one treatment note, dated July 2011, revealing evidence of mental impairment, with reported complaints of depression, frequent mood swings, and crying spells, and plaintiff's use of Prozac (Tr. 14, citing Tr. 380), and that other treatment/examination records showed plaintiff to be alert and oriented, without indications of abnormal mental status, and not currently receiving any specialized mental health care. (Tr. 14). It is well settled that the mere diagnosis of an impairment says nothing about its severity. *See Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time."). The ALJ further noted that plaintiff's reported activities of daily living did not appear consistent with more than mild limitations in activities of daily

---

[1] And, as the Commissioner explains, plaintiff's reliance on SSR 85-28 is misplaced, as that ruling applies to cases where the ALJ ends the sequential evaluation at step two because no impairment or combination of impairments has more than a minimal effect on the claimant's ability to work, SSR 85-28, 1985 WL 56856, at *3 (1985), which did not happen in this case.

living, maintaining social functioning, and with regard to concentration, persistence or pace. (Tr. 14). This finding is supported by the assessment of the reviewing psychologist, Dr. William Schirado, who similarly opined that plaintiff suffered mild restrictions in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 74-75). The ALJ acknowledged the June 2012 statement by plaintiff's primary care physician, Dr. J. Stepanski, D.O., wherein he reported a myriad of depressive symptoms that he opined result in marked limitations in plaintiff's ability to perform activities of daily living and maintain social functioning, and extreme limitations with regard to concentration, persistence or pace (Tr. 14, citing Tr. 381-85), but assigned that opinion little weight, finding the opinion "highly inconsistent" with the lack of objective medical evidence with regard to plaintiff's mental impairment. (Tr. 14). Plaintiff acknowledges that there are no formal mental status examinations in the record, and instead argues that the ALJ could have ordered a psychological consultative examination. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical

sources do not contain sufficient evidence to make a determination.")).  However, the ALJ is not required to seek out information to support plaintiff's claim, and plaintiff has not alleged that the medical evidence was incomplete, ambiguous or inconsistent.  Therefore, there is no basis to conclude that the ALJ abused his discretion when he did not seek to obtain the testimony of a medical expert.

Accordingly, substantial evidence supports the ALJ's finding that plaintiff's mental impairment did not significantly limit her ability to work during the relevant time period, and the ALJ did not err in finding that plaintiff's mental impairment was not severe.

### 2.   Treating source opinions

#### a.   Dr. Stepanski

As the ALJ recognized:

> In June 2012, the claimant's primary care physician, J. Stepanski, D.O., opined that the claimant is unable to perform even sedentary work, being able to lift and/or carry less than 10 pounds occasionally, sit less than four hours in an eight-hour workday, and stand and/or walk less than two hours in an eight-hour workday (Ex. 11F). Dr. Stepanski noted that the claimant requires an at-will, sit-stand option, with only occasional ability to twist or climb stairs, and no ability to stoop, crouch, or climb ladders (Ex. 11F).  Dr. Stepanski further stated that the claimant would need to lie down one to two times a day, avoid moderate exposure to extreme cold, and avoid all exposure to extreme heat, humidity, and respiratory irritants (Ex. 11F).

(Tr. 18). The ALJ assigned only some weight to Dr. Stepanski's opinion. (*Id.*)
Plaintiff asserts that she is entitled to relief because the ALJ improperly
discounted this opinion.

As both parties acknowledge, and as the Sixth Circuit recently re-
emphasized, greater deference is generally given to the opinions of treating
medical sources than to the opinions of non-treating medical sources. *See*
*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also*
*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). The opinion of
a treating physician is the subject of a special rule: such an opinion must be given
controlling weight if it is well-supported and not inconsistent with the record, and
even if it is not given controlling weight, it is subject to a rebuttable presumption
of deference. 20 C.F.R. §§ 404.1527(c), 4.927(c); *see also Massey v. Comm'r of*
*Soc. Sec.*, 409 Fed. Appx. 917, 921 (6th Cir. 2011) ("[T]he opinion of a treating
physician does not receive controlling weight merely by virtue of the fact that it is
from a treating physician. Rather, it is accorded controlling weight where it is
'well supported by medically acceptable clinical and laboratory diagnostic
techniques' and is not 'inconsistent . . . with the other substantial evidence in the
case record.'"). The ALJ "is not bound by conclusory statements of doctors,
particularly where they are unsupported by detailed objective criteria and
documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However,

34

an opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) (a physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Rogers*, 486 F.3d at 406 (citing § 404.1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies.  Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."  As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding the ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).  Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions he makes." *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428,

1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the medical opinion is determined by a set of factors that guides the weight given to the medical opinion, including the treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 372 (6th Cir. 2006).

The ALJ here discussed in detail the opinion offered by Dr. Stepanski as well as the other evidence of record. (Tr. 15-19). While acknowledging the long-standing treating relationship with plaintiff, the ALJ stated that he was "unable to ignore the significant lack of objective medical evidence provided by Dr. Stepanski's treatment notes, given such opinion of extreme physical limitation." (Tr. 18, citing Tr. 226-45, 313-29, 361-80). The ALJ further noted "the lack of indication that the claimant has required more intensive, specialized, or otherwise emergent care, with regard to her respiratory and musculoskeletal impairments, as well as reports of improvement with medical compliance, and the claimant's own report as to activities of daily living" (Tr. 18), where she indicated that she is

36

capable of personal care and household chores, however with some

accommodations, and stated that she is able to do laundry, vacuum, pick up sticks

in the yard, mow the lawn, do grocery shopping, and care for her pets. (Tr. 17-18,

citing Tr. 195-202).  The ALJ further found that Dr. Stepanski's opinion was

inconsistent with the findings of the consultative examining physician in

September 2011, more than a year after plaintiff's alleged onset date, that found

full range of motion of all joints, as well as no evidence of paravertebral spasm

and negative straight leg raising, and that plaintiff presented with a normal gait,

without the need for an assistive device for ambulation, normal motor strength,

intact sensation and reflexes, and without difficulty getting on and off the

examination table.  (Tr. 17, citing Tr. 342-46).  Plaintiff wholly fails to address

this consultative examining physician's findings.  The ALJ thus addressed the

"supportability of the opinion" and the "consistency" of that opinion with the

record as a whole.  The ALJ further acknowledged that x-rays of plaintiff's

cervical, thoracic and lumbar spine indicated mild to moderate degenerative

changes, but the mere diagnosis of an impairment does not establish that a

condition is disabling; rather, there must be a showing of related functional loss.

*See Higgs*, 880 F.2d at 863.  The ALJ did not ignore those findings but

accommodated them by specifically allowing plaintiff an at-will sit-stand option

and limiting plaintiff to light work with only occasional climbing of ramps or

stairs, balancing, stooping, kneeling and crouching.  Plaintiff also refers to

Dr. Stepanski's recording of her subjective complaints, but an opinion that is

based on the claimant's reporting of her symptoms is not entitled to controlling

weight.  *See Young*, 925 F.2d at 151.  Finally, the ALJ did not err in considering

plaintiff's lack of more intensive or specialized treatment, as the relevant statute

permits ALJs to consider the level of treatment a claimant has received as one

factor in weighing medical opinions.  *See* 20 C.F.R. § 404.1527(c)(6).  Therefore,

the undersigned concludes that the ALJ did not err in affording Dr. Stepanski's

opinion "some weight" and provided good reasons for the weight he assigned the

doctor's opinion.  *See Engelbrecht v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 392,

300-400 & n. 2 (6th Cir. 2014).

### b.    Dr. Lockwood

The ALJ assigned the opinion of Dr. Lockwood, plaintiff's treating

chiropractor, little weight, finding that the medical record did not support the

doctor's extreme limitations, "particularly considering the consistent denial of

radicular symptoms and/or weakness, and reports of only moderate pain, as well as

the lack of any indication that the claimant would require more intensive,

orthopedic, or otherwise emergent care."  (Tr. 18-19).   By definition,

chiropractors, such as Dr. Lockwood, are not "acceptable medical sources," and

thus the treating physician rule does not apply.  *See Walters v. Comm'r of Soc.*

*Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997) (treating chiropractor is not a "medical source" that must be accorded controlling weight and ALJ has discretion to determine appropriate weight to accord chiropractor's opinion based on all evidence in the record). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). An ALJ has considerable discretion in deciding what weight to give the various factors in the analysis. *See Walters*, 127 F.3d at 530 ("[T]he ALJ has the discretion to determine the appropriate weight to accord a ["other source"] opinion based on all evidence in the record . . . ."). And, the ALJ is under no obligation to explain each piece of evidence in the record. *Kornecky*, 167 Fed. Appx. at 508. Rather, the Social Security regulations require that information from other sources be "considered." SSR 06-03p, 2006 WL 2329939, at *1, 4. That is not a demanding standard. As the Sixth Circuit has expressed, "the ALJ is charged with the responsibility of determining the [RFC] based on her evaluation of the medical and non-medical evidence" and does not have "to base her RFC finding on a physician's opinion." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013).

The ALJ did not disregard Dr. Lockwood's opinion or clinical findings, but

39

instead expressly considered the treatment notes and found that the extreme limitations did not follow from such records, observing that the "chiropractic care notes make no indications of radicular symptoms, parathesia, or weakness" and that "the record makes no complaints of such tingling of the arms or right hand weakness until June 2012, at which time the claimant indicated such symptoms to be [ ] only fairly recent."  (Tr. 17, citing Tr. 253-312, 347-53, 386-89).  And, Dr. Lockwood's opinion that plaintiff's pain precludes all "work capacity" is not entitled to any special weight, as whether a claimant is disabled or able to work is an issue reserved to the Commissioner.  SSR 96-5p, 1996 WL 374183, at *5.  The undersigned finds no basis for disturbing the Commissioner's decision.

### c.    Borderline age situation

Plaintiff finally argues that, assuming it would be reasonable to give less than full weight to Dr. Stepanski's and Dr. Lockwood's opinions, the highest RFC supported by these medical opinions is an RFC for sedentary work, which does not require prolonged standing and walking.  Plaintiff continues that because she was just two months shy of her 50th birthday at the time of the hearing, a maximum RFC for sedentary work creates a "borderline age situation," and, given plaintiff's additional vocational factors of a high school education and inability to perform her unskilled past relevant work, a maximum residual functional capacity for sedentary work would ordinarily direct a finding of "disabled" pursuant to the

Medical-Vocational Guidelines, Rule 201.12.  The Commissioner did not address this argument.

According to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX), in borderline-age situations, the ALJ decides which category to apply using a "sliding scale approach."  HALLEX II-5-3-2, 2003 WL 25498226.  Under this approach, "the claimant must show progressively more additional vocation adversity(ies)–to support the use of the higher age–as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens."  *Id.*  Examples of such "additional vocational adversities" include being barely literate in English, having only a marginal ability to communicate in English, and having work experience in unskilled jobs in one isolated industry or work setting."  *Id.*  However, "nothing in [the language of the regulations] obligates an ALJ to address a claimant's borderline age situation in his opinion. . . .  Rather, the regulation merely promises claimants the Administration will 'consider' veering from the chronological-age default in borderline situations."  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *see also Van der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 528 (6th Cir. 2006) ("The fact that age categories are not to be applied mechanically, however, obviously does not mean that a claimant must be moved mechanically to the next age category whenever her chronological age is close to that category.")

(quoting *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 622 (6th Cir. 1987)).

In this case, plaintiff cites additional vocational factors of a high school education and inability to perform her unskilled past relevant work. (Dkt. 10). These two factors hardly qualify as "additional vocational adversities" supporting the use of the higher age category. *See Caudill v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 510, 517-18 (6th Cir. 2011) (finding that the ALJ properly placed plaintiff, who was two months shy of 55 at the time of the hearing decision, in the closely approaching advanced category "without further explanation.") (citing *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395 (6th Cir. 2008)). Here, the ALJ listed plaintiff's age of disability, birth date, and cited 20 CFR § 404.1563 before categorizing plaintiff as a younger individual, which minimally indicates that he was aware of the "regulation governing age categorization" and recognized that plaintiff was quickly approaching age fifty. *See Bowie*, 539 F.3d at 400 n.5. In addition, the ALJ reviewed the complete record and found that direct application of the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Grids) was not appropriate, and instead relied on the testimony of the vocational expert that a person with plaintiff's age, education and work experience and plaintiff's RFC would be capable of working in jobs that exist in significant numbers in the national economy. (Tr. 19-20). The undersigned thus finds no

42

error.  *See Bowie*, 539 F.3d at 399 (ALJ is not obligated to address a claimant's

borderline age situation in his opinion or explain his thought process in arriving at

a particular age-category determination); *Antio v. Comm'r of Soc. Sec.*, 2010 WL

779265, at *9-10 (E.D. Mich. Mar. 8, 2010) (same).  Plaintiff's claims of error

therefore should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

43

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: November 4, 2014                s/Michael Hluchaniuk
                                      Michael Hluchaniuk
                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on November 4, 2014, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                      s/Tammy Hallwood
                                      Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov