UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI S. KATONA,

        Plaintiff,                           Civil Action No. 14-CV-10417

vs.                                    HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## OPINION AND ORDER (1) SUSTAINING PLAINTIFF'S OBJECTIONS (Dkt. 13), (2) REJECTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 12), (3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 10), (4) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 11) AND (5) REMANDING TO THE COMMISSIONER FOR FURTHER CONSIDERATION

## I.   INTRODUCTION

In this social security case, Plaintiff Lori S. Katona appeals from the final determination of the Commissioner of Social Security that she is not disabled and, therefore, not entitled to disability benefits.  The matter was referred to Magistrate Judge Michael J. Hluchaniuk for a Report and Recommendation ("R&R").  The parties filed cross-motions for summary judgment (Dkts. 10, 11), and Magistrate Judge Hluchaniuk issued an R&R recommending that the Court deny Plaintiff's motion and grant Defendant's motion.  Plaintiff filed objections to the R&R (Dkt. 13) and Defendant filed a response (Dkt. 14).  For the reasons that follow, the Court sustains Plaintiff's objections to the R&R, rejects the recommendation contained in the R&R, grants Plaintiff's motion for summary judgment, denies Defendant's motion for summary judgment, and remands this matter to the Commissioner for further consideration.

1

## II.    FACTUAL BACKGROUND[1]

Plaintiff protectively filed for disability insurance benefits on June 7, 2011, claiming disability commencing on June 30, 2010.  Administrative Record ("A.R.") at 10.  Plaintiff's claim of disability was predicated on back pain, an enlarged heart and irregular heartbeat, depression, and asthma.  Id. at 151.  In an adult function report, Plaintiff stated that arthritis in her foot and back prevents her from standing or walking for long periods of time, and that she is short of breath all of the time.  Id. at 195.  Her daily activities consist of caring for her dog, lying down to rest, watching television, and talking on the phone.  Id. at 196.  Plaintiff can perform household chores and some yard work with the help of an assistive device (a "grabber"); Plaintiff stated that she would like to have help around the house but that she cannot afford it.  Id. at 197.  Plaintiff wrote that she is able to go outside, shop, and drive.  Id. at 198.  Plaintiff claimed that her conditions create limitations in her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb.  Id. at 200.  She can only walk for about ten to fifteen minutes before she must rest, id., and she must constantly rotate positions, sitting and standing, because of her back pain, id. at 195.  Plaintiff indicated that she does not handle stress well, but that Prozac eases this somewhat. Id. at 201.[2]

A hearing on Plaintiff's application was held on July 18, 2012 before Administrative Law Judge ("ALJ") Anthony R. Smereka.  Id. at 28.  Plaintiff testified at the hearing that the conditions limiting her ability to work included pain in her arm, back, and feet, breathing problems as a result of her chronic obstructive pulmonary disease ("COPD"), and obstructive

---

[1] The Magistrate Judge's R&R adequately reviewed the Administrative Law Judge's ("ALJ") findings but does not contain a summary of Plaintiff's medical history; accordingly, the Court provides such a summary here.

[2] Plaintiff also provided a third-party function report completed by a friend, Sally Everett, but Everett lacked knowledge as to many of Plaintiff's functional abilities or limitations.  See A.R. at 183-190.

sleep apnea.  Id. at 38-39, 50.  Plaintiff also indicated that she suffered from depression and anxiety, and that she smokes about a pack and a half of cigarettes per week.  Id. at 39-40. Plaintiff estimated the severity of her back pain as a seven or eight on a ten-point scale, but also stated that she has never been referred to an orthopedic specialist.  Id. at 42, 43-44.  Plaintiff saw a chiropractor and also took muscle relaxers, the latter of which helped to ease her pain.  Id. at 43, 44.  Plaintiff testified that she could only stand for about ten to fifteen minutes, and that the longest she could be on her feet was for about an hour while she shopped.  Id. at 44-45.  Plaintiff also testified that she could only sit for about two hours before she needed to stand up and walk around.  Id. at 45.  Plaintiff used a shower-chair and a handheld shower to avoid falling.  Id. at 50.  She avoided stairs, crawling, and bending as a result of her back pain and breathing problems.  Id. at 51-52.

Plaintiff was on preventative medication for her COPD (Advair and Spiriva), but also regularly used a breathing machine.  Id. at 50.  Plaintiff stated that both her breathing and her back pain disrupt her sleep, and that she only gets about four to five hours of sleep a night and then she needs to move to her recliner to lie down and sleep.  Id. at 52.  Plaintiff also testified that she had been depressed her whole life and had undergone therapy as a young adult, but it did not help.  Id. at 54.  She requested Prozac from her doctor because she was prone to crying outbursts and was sleeping all the time.  Id.  Plaintiff talks on the phone with relatives and a close friend every day and visits her friend about once a month.  Id. at 55.  Plaintiff further indicated that she had an enlarged heart and an irregular heartbeat, but that she was not taking medication for either, id. at 54-55, although she was on medication for high blood pressure and diabetes, id. at 57.

3

Plaintiff's primary-care physician appears to be Dr. J. Stepanski, D.O.  Dr. Stepanski's treatment notes prove difficult to read, but Plaintiff appears to have complained about shortness of breath on several occasions.  Id. at 227, 229, 364.  However, Plaintiff also indicated that Albuterol helped her breathing.  Id. at 364.  Dr. Stepanski's notes also reflect complaints of problems standing and sitting, id. at 227, tingling in Plaintiff's arms, hands, and shoulder, id. at 361, and back pain that was exacerbated by lying down or bending side to side, id. at 363. Plaintiff underwent some form of imaging in her shoulder and back, the results of which were negative for her shoulder, but demonstrated mild to moderate degenerative changes in the cervical, lumber, and thoracic regions of Plaintiff's spine.  Id. at 366, 370.

Dr. Stepanski referred Plaintiff to a pulmonary specialist, Dr. Mary O'Connor, D.O.  Dr. O'Connor noted that Plaintiff had frequent episodes of shortness of breath, often requiring the use of a rescue inhaler.  Id. at 317.  Plaintiff reported that difficulties breathing occasionally woke her from sleep and that she was a generally restless sleeper.  Id. at 317, 318.  Dr. O'Connor also stated that Plaintiff reported some joint and back pain, and that Plaintiff was depressed with frequent mood swings and crying spells.  Id. at 318.  Prozac had helped some with the latter.  Id. A pulmonary function test was performed, the results of which were consistent with mild obstructive deficit with hyperinflation and air trapping of the lungs.  Id.  Dr. O'Connor suggested that Plaintiff suffered from either COPD or chronic bronchitis in addition to obstructive sleep apnea.  Id.  Dr. O'Connor added Spiriva to Plaintiff's regimen of breathing medications and scheduled a sleep study.  Id. at 319.  Plaintiff returned to Dr. O'Connor, reporting that she did not keep her sleep study appointment but that the Spiriva helped with her breathing and she had successfully reduced her smoking.  Id. at 332.  Dr. O'Connor's examination revealed clear breath sounds and a regular heart rate and rhythm.  Id.  Dr. O'Connor examined Plaintiff a third time,

4

finding that Plaintiff had slight forced expiratory wheezing, a finding consistent with Plaintiff's complaints of increased shortness of breath upon running out of one of her medications.  Id. at 355.  Plaintiff had since completed a sleep study, which showed that Plaintiff responded well to continuous positive airway pressure ("CPAP") therapy.  Id.  However, Plaintiff did not tolerate the higher pressure therapy at home and discontinued using the CPAP machine.  Id.

Plaintiff was also treated by Dr. Randy Feldman, D.P.M., for foot and heel pain.  Records indicate that Dr. Feldman observed pain, swelling, tenderness, and tightness in Plaintiff's Achilles tendon.  Id. at 249.  Plaintiff also suffered from a painful ulcer on her heel, which Dr. Feldman debrided on multiple occasions.  Id. at 248, 250.  Plaintiff continued to complain of severe pain and tenderness in her heel and x-rays revealed the presence of a large spur.  Id. at 252.  Plaintiff opted for a conservative course of treatment that did not involve surgery, and ultimately received pain injections.  Id. at 252, 354.

Plaintiff frequently saw Dr. Kenneth Lockwood, D.C., a chiropractor, complaining of moderate to severe back pain.  See id. at 259-298, 300-312, 347-353.  Dr. Lockwood's notes often reference subluxation in Plaintiff's spinal region and that Plaintiff was positive for Derefield Test.  See id.

Plaintiff was also examined by a consultative physician, Dr. Matthew Byington, D.O., at the request of the state during the disability determination process.  Id. at 342-344.  Upon examination, Dr. Byington observed that Plaintiff had a normal gait and encountered no difficulty getting on and off the examination table.  Id. at 343.  Plaintiff had no tenderness in her joints and her range of motion was satisfactory.  Id.  Dr. Byington observed that Plaintiff's lungs were clear with no rales, rhonchi, or wheezing, and that her heart did not appear enlarged, but

noted that her heart rate was irregular.  Id.  Plaintiff did not report any chest pain and was alert and oriented at the time of the exam.  Id. at 344.

### III.    LEGAL STANDARD

The Court reviews de novo those portions of the R&R to which a specific objection has been made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by [the ALJ]."  Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001).  "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability."  Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013).

### IV.    ANALYSIS

#### A.  Objection One: The ALJ Failed to Consider the Effect of Plaintiff's Mental Impairments on Plaintiff's Residual Functional Capacity ("RFC")

In her motion for summary judgment, Plaintiff asserted two primary arguments: first, that the ALJ erroneously determined that Plaintiff's mental impairments were not severe; and second, that the ALJ failed to accord proper weight to the medical opinions of Plaintiff's treating physicians.  Pl. Br. at 5, 9 (Dkt. 10).  In connection with her first argument, Plaintiff also stated that the ALJ's failure to find Plaintiff's mental impairments were severe "led to the concomitant

error that the ALJ's RFC finding include[d] no mental impairment affecting [Plaintiff's] ability to work." Id. at 5. In addressing Plaintiff's first argument, the Magistrate Judge reasoned that any error that may have occurred at Step Two — in determining the severity of Plaintiff's claimed impairments — would be harmless, because the ALJ's conclusion that Plaintiff's mental impairments were non-severe did not dispose of Plaintiff's claim for disability. R&R at 30-31. Rather, the ALJ determined that Plaintiff had other physical impairments that were severe and proceeded with the remainder of the five-step analysis, making any earlier error legally irrelevant. Id. The Magistrate Judge also went on to suggest that substantial evidence supported the ALJ's conclusion that Plaintiff's mental impairments were non-severe, thus recommending that the ALJ did not err in the first instance. Id. at 31.

In her objections, Plaintiff more clearly states that the lack of mental or cognitive limitations in the ALJ's RFC finding is precisely what renders the Step Two error not harmless. Obj. at 1-2 (Dkt. 13). While the ALJ proceeded to the remaining steps in the disability process, Plaintiff's argument is that the ALJ did not continue with the remaining steps in a "legally sufficient fashion." Id. at 2. Specifically, the ALJ failed to consider the effect of Plaintiff's mental impairments on her ability to work — thereby rendering the RFC inadequate as a matter of law — and because the ALJ impermissibly discounted Plaintiff's treating physician's opinion with respect to Plaintiff's mental impairments. Id. at 2-3. Plaintiff asserts that the ALJ's RFC finding does not contain any limitations associated with Plaintiff's mental impairments, and that the analysis fails to explain why no such limitations are included even though Plaintiff's treating physician identified several such limitations. Id. at 4-5.

Defendant responds that the ALJ did not include any mental restrictions or limitations in the RFC, because the ALJ determined that the evidence did not support any such limitations.

Def. Resp. at 2 (Dkt. 14).  Defendant argues that this conclusion is reasonable in light of the lack of evidence of any debilitating mental impairments.  Id.  Defendant further argues that the ALJ properly discounted Plaintiff's treating physician's opinion with respect to her mental impairments, because it was unsupported by the evidence of record and appeared to be somewhat arbitrary.  Id. at 3-4.

One of the threshold steps in the five-step disability analysis is determining whether a claimant has an impairment that is severe.  20 C.F.R. § 416.920(a)(4)(ii).  If an ALJ determines that a claimant does not have an impairment, or combination thereof, that is severe, the claimant is deemed not disabled; otherwise the five-step analysis continues.  Id.  However, in assessing the claimant's RFC, social security regulations require the ALJ to consider the limiting effects of all of the claimant's impairments — severe and non-severe.  20 C.F.R. § 404.1545(e); see also SSR 96-8p, 1996 WL 374184, at *5; White v. Comm'r of Soc. Sec., 312 F. App'x 779, 787 (6th Cir. 2009).

Because an ALJ must consider non-severe impairments in addition to severe impairments when determining whether a claimant can perform substantial gainful activity, courts have held that, so long as the claim for disability is not terminated at the Step Two stage, any potential error in classifying a claimant's impairments as severe or non-severe is generally not reversible. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").  But for a Step Two error to be harmless — and therefore not subject to reversal — the ALJ must have actually considered the cumulative

8

effect of all of the claimant's impairments, severe and not severe, in assessing the claimant's RFC. Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009); Fisk v. Astrue, 253 F. App'x 580, 583-584 (6th Cir. 2007); Stephens v. Astrue, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. March 31, 2010).

Here, it appears that the ALJ did not take into account Plaintiff's non-severe mental impairments in later steps of the disability determination, specifically, when evaluating Plaintiff's RFC. Accordingly, any error committed by the ALJ at Step Two is not automatically deemed harmless. As noted supra, however, the Magistrate Judge also found that substantial evidence supported the ALJ's classification of Plaintiff's mental impairments as non-severe, and Plaintiff does not appear to contest that conclusion. Still, Plaintiff correctly points out that the ALJ's failure to consider Plaintiff's non-severe impairments in the RFC analysis not only makes suspicious any possible Step Two error, but also gives rise to a distinct — and reversible — error at Step Four, where the ALJ was required to consider the limiting effects of all of Plaintiff's impairments on her ability to work.

At Step Two, the ALJ found Plaintiff to have severe impairments consisting of obesity, COPD, obstructive sleep apnea, and degenerative disease of the spine. A.R. at 12. The ALJ then reviewed other complaints alleged by Plaintiff, including cardiovascular abnormalities, heel pain, shoulder pain, and — most relevant for the present purposes — anxiety and depression, ultimately concluding that such impairments were not severe. Id. at 13-14. While the ALJ devoted a detailed discussion to his evaluation of Plaintiff's mental complaints at Step Two, see id. at 14, the remainder of the ALJ's opinion, including at Steps Three and Four, is devoid of any reference to Plaintiff's alleged mental impairments, suggesting that the ALJ did not consider

9

those impairments while determining Plaintiff's RFC, contrary to what is required under the social security regulations.

For instance, the ALJ stated that Plaintiff did not have an impairment, or combination thereof, that met or equaled the severity of a listed impairment, and indicated that he reviewed Listings 1.04 (disorders of the spine), 3.02 (chronic pulmonary insufficiency), and 3.10 (sleep-related breathing disorders). Id. at 15; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, there is no suggestion at Step Three that the ALJ reviewed the effect of Plaintiff's non-severe mental impairments in assessing Plaintiff's ability to work.

Furthermore, the ALJ's RFC analysis appears limited to a discussion of Plaintiff's physical impairments, and does not once mention what, if any, limitations Plaintiff's alleged mental impairments impose on Plaintiff's ability to work. The ALJ attributed Plaintiff's disability claim to "limitations caused by [COPD], obesity, obstructive sleep apnea, and back pain," resulting in "limitations primarily caused by pain, shortness of breath, and/or fatigue." A.R. at 15. The ALJ found that Plaintiff's medical impairments could be expected to cause such symptoms, but that the symptoms were not as severe as alleged. Id. at 16. The ALJ's RFC analysis then goes on to discuss Plaintiff's physical impairments, with the ALJ concluding that he was "cognizant of some physical limitations," but that "medical records do not appear to indicate that [Plaintiff] is precluded from light work" with certain restrictions. Id. at 17. The ALJ again references Plaintiff's "physical limitations" toward the end of his RFC analysis, id. at 19, but makes no mention of any non-physical limitations. Judging by the RFC analysis, it is possible that Plaintiff's mental impairments may have been excluded from consideration all together.[3]

---

[3] The ALJ's boilerplate statement that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

Defendant's argument to the contrary — that the ALJ did not include any restrictions corresponding to Plaintiff's mental limitations because the evidence did not support such limitations — misses the mark.  The ALJ discussed the evidence offered in support of Plaintiff's mental impairments at Step Two, when determining whether Plaintiff's mental impairments were severe or non-severe.  See id. at 14.  However, a Step Two analysis is distinct from the ALJ's obligation to consider the impact of Plaintiff's non-severe impairments in addition to and in conjunction with Plaintiff's severe impairments in assessing Plaintiff's RFC.  See, e.g., Johnson v. Colvin, No. 3:13cv00301, 2014 WL 6603376, at *8 (S.D. Ohio Nov. 19, 2014) ("Assuming this [analysis] suffices to support the ALJ's conclusion that Plaintiff does not have a severe mental impairment, this does not demonstrate that the ALJ considered Plaintiff's non-severe mental impairments at step four as required by law.") report adopted by No. 3:13cv00301, 2014 WL 7015188 (S.D. Ohio Dec. 10, 2014).  A non-severe impairment is defined by the regulations as an impairment that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a) (emphasis added).  Notably, the definition contemplates that non-severe impairments may very well impose some type of limitation on basic work activities; accordingly, an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment — either singly or in combination with a claimant's other impairments — does not impose any work-related restrictions.[4]  And to the extent an ALJ determines that an identified impairment, severe or non-severe, does not result in any work-related restrictions or limitations, the ALJ "is required to state the basis for such

---

other evidence," A.R. at 15, is not sufficient to convince the Court that the ALJ considered Plaintiff's non-severe mental impairments in the absence of some other statement or explanation suggesting as much.

[4] For the same reason, that the ALJ's conclusion that Plaintiff's mental impairments were non-severe may have been supported by substantial evidence does not also mitigate the subsequent failure to consider Plaintiff's mental impairments later on in the sequential analysis.

conclusion." Hicks v. Comm'r of Soc. Sec., No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013); see also Schlicker v. Comm'r of Soc. Sec., No. 10-cv-13697, 2011 WL 5865148, at *11 (E.D. Mich. Nov. 4, 2011) report adopted by No. 10-13697, 2011 WL 5865082 (E.D. Mich. Nov. 22, 2011); Murray v. Colvin, No. 3:12-0410, 2014 WL 5323061, at *12 (M.D. Tenn. Oct. 16, 2014) report adopted by No. 3:12-cv-00410, 2014 WL 5824539 (M.D. Tenn. Nov. 7, 2014).

The ALJ's analysis of Plaintiff's mental impairments at Step Two, while otherwise thorough, does not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations. And while the ALJ discusses Dr. Stepanski's medical opinion with regard to Plaintiff's mental impairments, including his decision to give Dr. Stepanski's opinion little weight, nothing in that discussion demonstrates that the ALJ determined that Plaintiff's mental conditions had no effect on her ability to perform light work as described in the RFC. Indeed, the ALJ found that Plaintiff's "reported activities of daily living do not appear consistent with more than mild limitations in activities of daily living, maintaining social functioning, and with regard to concentration, persistence, or pace." A.R. at 14. However, the ALJ never returns to this thought in the course of his RFC analysis and the Court is left to wonder what precisely the ALJ meant by "mild limitations" and what impact, if any, those limitations may have on the Plaintiff's RFC.

Courts in this circuit have held that an ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error. See Albadiry v. Colvin, No 3:13-0840, 2014 WL 4533349, at *17 (M.D. Tenn. Sept. 11, 2014) report adopted by No. 3:13-0840, 2014 WL 4960949 (M.D. Tenn. Sept. 30, 2014); Widok v. Comm'r of Soc. Sec., No.

1:13-cv-00667, 2014 WL 4064043, at *14 (N.D. Ohio Aug. 15, 2014); <u>Murray</u>, 2014 WL 5323061 at *12; <u>Hicks</u>, 2013 WL 3778947 at *3.  This may be true even where substantial evidence supports the ALJ's ultimate disability decision.  See <u>Murray</u>, 2014 WL 5323061 at *12 ("The defendant argues that the record does not support the limitations alleged by the plaintiff.  However, while this may be true, it is the role of the ALJ and not the role of the Court to weigh the evidence." (footnote and citation omitted)); <u>Schlicker</u>, 2011 WL 5865148 at *8 (The court "'may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.'" (quoting <u>Pollaccia v. Comm'r of Soc. Sec.</u>, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011) <u>report</u> <u>accepted by</u> No. 09-CV-14438, 2011 WL 281037 (E.D. Mich. Jan. 25, 2011))).  Accordingly, remand is warranted so that the ALJ may properly consider the effect of both Plaintiff's non-severe and severe impairments on Plaintiff's RFC.[5]

## V.    CONCLUSION

For the reasons discussed above, Plaintiff's objections (Dkt. 13) are sustained, the recommendation contained in the Magistrate Judge's R&R (Dkt. 12) is rejected, Plaintiff's motion for summary judgment (Dkt. 10) is granted, and Defendant's motion for summary

---

[5] In her objections, Plaintiff also argues that the ALJ "improperly discounted the opinions of [Plaintiff's] longtime treating primary care physician with respect to her mental impairments" as part of the basis for why the ALJ's purported error at Step Two was not harmless.  Obj. at 2.  Later on in her argument, Plaintiff identifies several "objective" medical findings that she asserts support the functional restrictions contained in Dr. Stepanski's medical opinion.  <u>Id.</u> at 4-5.  Notwithstanding these brief references, Plaintiff provides no argument as to why the Magistrate Judge or the ALJ erred in applying the treating-physician rule.  Moreover, Plaintiff's references to Dr. Stepanski's opinion seem designed to lend support to Plaintiff's principal argument that the ALJ erred in excluding Plaintiff's mental health impairments from the RFC analysis, or that the ALJ should have at minimum explained why no restrictions corresponding to Plaintiff's mental health impairments were necessary.  In light of the Court's overall conclusion that remand is appropriate, and given that Plaintiff has provided no legal support or analysis to supplement her cursory contention that the ALJ improperly discounted Dr. Stepanski's opinion, the Court declines to reach this argument to the extent it was made in the first place.

judgment (Dkt. 11) is denied.  The case is remanded to the Commissioner for further proceedings

pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g).

      SO ORDERED.


Dated:  February 27, 2015             s/Mark A. Goldsmith
         Detroit, Michigan          MARK A. GOLDSMITH
                                  United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2015.

                              s/Johnetta M. Curry-Williams
                              Case Manager